UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x

DIONNE MARSHALL and LUCIA
GOMEZ, on behalf of themselves and all
others similarly situated,

                    Plaintiffs,                             **MEMORANDUM & ORDER**

          - against -                                      No. 13-CV-1471 (RJD) (JO)

DEUTSCHE POST DHL and DHL
EXPRESS (USA) INC.,

                    Defendants.
------------------------------------------------------- x

RAYMOND J. DEARIE, District Judge:

        The collective action provision of the Fair Labor Standards Act, 29 U.S.C. § 216(b), is

intended to incentivize employees to bring claims for wage and hour violations through the

pooling of resources, facilitating the vindication of rights in situations where employees might

not otherwise sue.  Attorneys play an indispensable role in these cases by identifying labor law

violations, marshalling similarly-situated employees, and, of course, bringing suit.  The law

encourages these "private attorney generals" by paying their legal fees in most successful cases.

When collective actions succeed, attorneys are entitled to payment of their fees by defendants

under § 216(b).  When class actions settle and result in the creation of a common fund, attorneys

are often awarded a reasonable fee from the fund.

        The payment of attorneys' fees from a common fund presents a dilemma.  Once a

settlement is reached, class counsel are, in a sense, pitted against the very class members they

represent.  At the same time, as the adversarial process wanes, settling defendants lose interest in

how settlement monies are distributed.  Almost invariably, the class is left without a true

advocate, and it is the court alone that is left to safeguard their interests.

That is a task easier said than done. Without the adversarial process, there is a natural temptation to approve a settlement, bless a fee award, sign a proposed order submitted by plaintiffs' counsel, and be done with the matter. But in many cases where a settlement is for back wages owed and nothing more, fees come out of the class members' paychecks. That is not to say that such fee awards are inappropriate. Rather, courts must scrutinize such fee requests, awarding an amount that adequately compensates class counsel and encourages their participation in future cases, while at the same time guarding class members' recovery against overly generous paydays for their attorneys.

In this case, like so many, plaintiffs move, unopposed, for final approval of a class settlement and an award of attorneys' fees. The plaintiffs represent a class of Deutsche Post DHL and DHL Express (USA) Inc. (collectively "DHL") agents working at airports in New York, Miami and Los Angeles who were undercompensated through defendants' alleged unlawful rounding of time, automatic deductions for meals, and requests that employees work off-the-clock. The plaintiffs, through their attorneys, obtained a settlement of $1,500,000 for 242 class members. That figure is nearly equal to plaintiffs' estimated compensatory damages in this case (approximately $1,650,000). I have no qualms with approving this settlement. It is neither remarkable nor modest, but it is procedurally and substantively fair. For the reasons set forth herein, plaintiffs' motion for final approval of the settlement is granted.

Class counsel also requests a fee of $500,000 plus costs. An award of that size is not appropriate. Counsel's hourly billing rates are not in line with the prevailing hourly rates in this district. Additionally, the total hours billed is excessive in a number of respects. Accordingly, for the reasons set forth herein, the requested attorneys' fees are reduced to $370,236.50. Counsel's requested costs and service awards for the class representatives are approved.

<u>BACKGROUND</u>

DHL provides, among other things, express international mail and freight services. Plaintiffs brought this action on March 20, 2013, on behalf of similarly-situated current and former hourly paid and non-exempt service agents of DHL at John F. Kennedy International Airport, Los Angeles International Airport, and Miami International Airport. According to the complaint, DHL undercompensated its employees by configuring the time clocks to round down, automatically reducing 30 minutes for meal breaks, and requiring that employees perform work before clocking in or after clocking out.

DHL moved to dismiss the case in October 2013. That motion was never decided because, after the briefing was complete, plaintiffs subsequently amended their complaint and DHL withdrew its motion. DHL served its answer to the amended complaint on March 17, 2014, denying the allegations against it and asserting a variety of affirmative defenses. The parties then began discovery. Discovery proceeded relatively smoothly and Magistrate Judge James Orenstein was not called on to resolve disputes. In response to plaintiffs' document requests, DHL served 6,554 pages of documents regarding its compensation policies and practices. While these documents included internal e-mails regarding DHL policies, the production was largely comprised of voluminous collective bargaining agreements, employee manuals, and payroll records. Counsel did not review all the employee payroll records; instead they reviewed a sampling consisting of about 11.5% of the class size (roughly 30 employees give or take). The plaintiffs took six depositions and defended five depositions of the named plaintiffs and opt-in plaintiff. The parties never began expert discovery. In total, it appears that of the 1,325 hours that counsel billed to this case, approximately 350 hours were billed on discovery-related work.

Near the end of discovery, class counsel moved for certification of the case as a collective action pursuant to 29 U.S.C. § 216(b). DHL opposed the motion. While the motion was fully briefed, Judge Orenstein stayed its disposition so that the parties could try to settle the case. The parties mediated, and after a series of negotiations, settled the case on November 11, 2014.

The settlement releases the class's claims against DHL in exchange for $1,500,000. Section 4.2 of the settlement agreement provides that class counsel's attorneys' fees and costs, services payments to class representatives, DHL's portion of payroll taxes, settlement administrative costs, and a payment to the California Workforce Development Agency (a "PAGA" payment) will be deducted from the total settlement amount. The remaining portion of the settlement will be distributed to class members who timely submit claim forms. Pursuant to section 4.3 of the settlement agreement, payouts to individual class members are calculated by determining the total number of weeks worked by a claimant and then multiplying that number by $32.25 (1.5 times an agent's average hourly base rate of $21.50). If the total sum of these individual settlement payouts exceeds the remaining total of the settlement (after the deduction of attorneys' fees, etc.), then each claimant's payout is reduced on a *pro rata* basis.

On March 17, 2015, the Court granted preliminary approval to the settlement and conditionally certified the class. Notices of settlement were subsequently disseminated to 242 class members. The notices advised class members of the terms of the settlement, including how individual settlement amounts would be calculated, the amount of attorneys' fees request, and how to opt out. Postcard reminders and telephone calls were also placed to class members. Of the 242 class members, 180 submitted timely claims. According to plaintiffs' counsel, "the settlement administrator estimates that these claims equate to approximately $1.24 million."

Only one class member has requested exclusion from the settlement. No class member voiced an objection to certification of the class or the settlement.

Plaintiffs move for final approval of the settlement, an award of attorneys' fees and costs, and an award of service payments to the named plaintiffs. Counsel report that they billed 1,325 hours on this case for a total lodestar of $591,571.25. They request a fee award of $500,000, which represents one third of the settlement amount. Counsel also seeks to be reimbursed for $33,371.39 in costs, which were largely incurred on travel, deposition transcripts, mediation fees, and photocopy expenses. Plaintiffs seek service awards of $5,000 each for a total of $15,000.

On July 9, 2015, Judge Orenstein conducted a fairness hearing on the proposed settlement and fee request. At the hearing, Judge Orenstein expressed concern about counsel's fee request. Following the hearing, counsel provided a supplemental letter on the reasonableness of their fee request, and on July 22, 2015, Judge Orenstein recommended that the Court approve the proposed settlement in its entirety, including the fee application. Since issuing that recommendation, no member of the class or other interested party has made an objection.

DISCUSSION

A. <u>Final Certification of the Settlement Class</u>

Before certifying a class for settlement purposes, a court must determine whether the requirements for class certification have been met. The Court previously provisionally certified the class for settlement purposes, noting that it satisfies the requirements of Rule 23(a) and (b)(3). Having now sent notice to class members and conducted a fairness hearing, there is no reason to depart from that prior order.

Each of the Rule 23(a) requirements is satisfied. First, the class consists of over 200 employees, which is well above the 40-member point at which "numerosity is presumed."

Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). Second, all class members were DHL employees and claim that they were not paid proper wages for all hours worked. All of the claims are similar and arise under the FLSA and state labor laws and there are thus "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Third, the typicality requirement is satisfied because the named plaintiffs' claims are for the same type of injury under the same legal theory as the rest of the class. See Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 252 (2d Cir. 2011). Finally, the proposed class representatives will provide adequate representation because they "have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir. 2011) (internal quotation marks and citation omitted).

Additionally, consistent with Rule 23(b)(3), common questions predominate because the class members' legal theories under the FLSA and state labor laws are the same and arise from DHL's common and uniform practice of failing to pay class members proper wages for all hours worked. The settlement class is unified by common factual allegations, including that they were not paid overtime compensation for hours worked in excess of 40 hours per week. These commonalities predominate over minor variations in the plaintiffs' individual situations and the need for individualized damages calculations. Moreover, a class action is the superior method of adjudicating this controversy because the plaintiffs and class members are similarly situated, likely have limited financial resources, and lack incentives to prosecute individual actions. Accordingly, certification of the class for settlement purposes is warranted.

B.  Approval of the Settlement

Settlement of a class action requires court approval pursuant to Rule 23(e).  "Before such a settlement may be approved, the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion."  Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000).  This requires consideration of the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness."  McReynolds v. Richards-Cantave, 588 F.3d 790, 803 (2d Cir. 2009) (quoting D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)).  There is a "presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"  Id. (quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005)).  Such a presumption is consistent with the "strong judicial policy in favor of settlements, particularly in the class action context."  Wal-Mart Stores, 396 F.3d at 116 (quoting In re Painewebber Ltd. Partnerships Litig., 147 F.3d 132, 138 (2d Cir. 1998)).

The settlement here is procedurally reasonable and entitled to a presumption of fairness.  The agreement is the result of extensive negotiations facilitated by a mediator.  The settlement was negotiated at arm's length after a thorough evaluation of the claims, including sufficient discovery to inform the parties of the merits.

In considering the substantive fairness of the settlement, the Court is guided by the following factors: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." Wal-Mart Stores, 396 F.3d at 117 (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974)).

"Wage and hour cases are not unduly complex," Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 432 (S.D.N.Y. 2014), and this case is no exception. See Encalada v. Baybridge Enterprises Ltd., No. 14-CV-3113 (BMC), 2014 WL 4374495, at *2 (E.D.N.Y. Sept. 2, 2014) (noting that while "[t]here are some, relatively few, FLSA cases that raise complex issues like exemptions, coverage, collective action notification, classification, or statutory interpretation . . . the majority of cases . . . could hardly be simpler"). That said, even though this case is not particularly complex, further litigation would still be costly. The parties have not briefed class certification or summary judgment motions, and have not begun expert discovery. Continuing with the litigation would therefore entail significant costs and take considerable time. This factor weighs in favor of approval of the settlement.

The second factor—the reaction of the class—also favors settlement. Not a single member of the class objected to the settlement, and only one class member has opted out of the class. "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." Wal-Mart Stores, 396 F.3d at 118 (citation omitted). The third factor favors approval of the settlement. Fact discovery is complete. Plaintiffs settled only after a substantial amount of work had been completed, leaving relatively few unknowns about the viability of their claims. Id.

The fourth, fifth and sixth factors, which relate to the risks of obtaining relief and maintaining a class, weigh in favor of approval. Plaintiffs would still need to certify the class

and survive summary judgment motion practice.  While plaintiffs overstate the risk to their case if the litigation proceeded, this case was not a slam dunk and plaintiffs may have struggled to amass sufficient evidence that they did indeed work when DHL claims they did not.  As for the seventh factor, DHL could have afforded a settlement greater than $1.5 million, but that, "standing alone, does not suggest that the settlement is unfair."  Viafara v. MCIZ Corp., No. 12-CV-7452 (RLE), 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014) (citations omitted).

The final two factors require consideration of the range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation.  Plaintiffs' counsel reported that the class's estimated compensatory damages were approximately $1.65 million, and the maximum possible recovery—including liquidated damages, interest, and attorneys' fees—would have been approximately $4.2 million.  (DHL, unsurprisingly, maintained that the potential recovery was much lower.)  Compared to the best possible recovery, the settlement is not particularly impressive.  But it does represent recovery of approximately 91% of the class's compensatory damages, and courts within this circuit have regularly found settlements recovering nearly all of a class's actual damages as within the range of reasonableness.  See, e.g., Lizondro-Garcia v. Kefi LLC, 300 F.R.D. 169, 180 (S.D.N.Y. 2014) (finding that a settlement was within the range of reasonableness because "even after attorney's fees, service awards, and administrative costs, plaintiffs would receive nearly all of their actual damages"); Ceka v. PBM/CMSI Inc., No. 12-CV-1711 (DAB), 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) (approving a settlement that "represents approximately 100% of the allegedly owed compensatory damages").  Additionally, the settlement "assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road.'"  Gilliam v. Addicts Rehab.

Ctr. Fund, No. 05-CV-3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting

Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd., No. 01-CV-11814 (MP), 2004 WL 1087261,

at *5 (S.D.N.Y. May 14, 2004)). Thus, these factors weigh in favor of final approval.

In sum, having reviewed all of the relevant factors, I conclude that the settlement is

substantively fair and adequate and therefore is approved.

C. Attorneys' Fees

Class counsel request an award of reasonable attorneys' fees.

1. Method of Fee Calculation

A court may calculate a reasonable attorneys' fee either by determining the so-called

"lodestar" amount or by awarding a percentage of the settlement. See McDaniel v. Cnty. of

Schenectady, 595 F.3d 411, 417 (2d Cir. 2010). Under the percentage-of-the-fund method, the

attorneys are awarded a reasonable percentage of the common fund. Id. Under the lodestar

method, the court must determine the "lodestar—the product of a reasonable hourly rate and the

reasonable number of hours required by the case—[which] creates a presumptively reasonable

fee." Millea v. Metro-N. R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks and

citation omitted). Although "the trend in this Circuit is toward the percentage method," either

approach is appropriate. McDaniel, 595 F.3d at 417 (quoting Wal-Mart Stores, 396 F.3d at 121).

Neither approach, however, is perfect. "The lodestar method . . . creates an incentive for

attorneys to bill as many hours as possible, to do unnecessary work, and for these reasons also

can create a disincentive to early settlement." Id.; see also Goldberger v. Integrated Res., Inc.,

209 F.3d 43, 48-49 (2d Cir. 2000) (noting that the lodestar method "created a temptation for

lawyers to run up the number of hours for which they could be paid"). The percentage-of-the-

fund method, on the other hand, "create[s] perverse incentives of its own, potentially

encouraging counsel to settle a case prematurely once their opportunity costs begin to rise." McDaniel, 595 F.3d at 419.

Much of this is theoretical. The debate over the best method for awarding fees is often discussed in terms of the incentives the methods create for attorneys. Certainly the incentives matter, but it is a mistake to give these considerations too much weight at this stage. On a macro level, if either method of awarding fees is permissible (as the Second Circuit holds, see McDaniel, 595 F.3d at 417), how does that affect attorney incentives in future cases? Does the uncertainty over a court's choice of method for awarding fees incentivize settlement at the optimal point in the litigation, without creating a temptation to overbill? Or does this uncertainty result in the negative outcomes associated with both methods (i.e., overbilling and premature settlements)? On a case-specific level, the fee method selected is unlikely to affect attorney incentives. This case is already settled, so the method selected will not impact the attorneys' behavior here. Moreover, given the fact that district courts have discretion to select either method, my decision here is unlikely to have any broader signaling or deterrent effect. Therefore, in selecting a method for awarding fees, I am guided by which method most accurately identifies the proper, reasonable amount of compensation to the attorneys, not by the incentives purportedly created or furthered by the approach.

The percentage method is simpler on its face to implement—a court need only award a reasonable percentage of a settlement. But what makes a percentage reasonable? The Second Circuit instructs that in assessing the reasonableness of a requested percentage of the fund, a court should consider (1) the time and labor expended by counsel, (2) the magnitude and complexities of the litigation, (3) the risk of the litigation, (4) the quality of the representation, (5) the requested fee in relation to the settlement, and (6) public policy considerations.

Goldberger, 209 F.3d at 50. Courts can and often do use the lodestar calculation as a "cross-check" on the reasonableness of the requested percentage. Id. My experience, though, is that the results of these amorphous multi-factor tests are often outcome driven. It is almost impossible to know what amount of time, litigation magnitude, complexity, and risk justifies a 20 percent versus 30 percent fee award. The "consider-everything approach . . . lacks a benchmark; a list of factors without a rule of decision is just a chopped salad." In re Synthroid Mktg. Litig., 264 F.3d 712, 719 (7th Cir. 2001). Inevitably, in search of a benchmark, the percentage-of-the-fund approach often collapses into the question of whether the requested percentage is reasonable in relation to the settlement, and whether the requested percentage in line with the norm or trend in the circuit.

The prevailing wisdom—at least until recently—was that a 33 percent fee in employment common fund class action cases was the norm within this circuit. However, "there is reason to be wary of much of the caselaw awarding attorney's fees in FLSA cases in this circuit." Fujiwara, 58 F. Supp. 3d at 436. Most of the authorities awarding fees of one-third are or cite to "proposed orders drafted by the class action plaintiffs' bar and entered with minimal, if any, edits by judges," and they are without persuasive force. Id. at 436; see also Lizondro-Garcia, 2015 WL 4006896, at *4 (declining to apply the percentage-of-the-fund method because of the concerns raised in Fujiwara); Gonzalez v. Scalinatella, Inc., No. 13-CV-3629 (PKC) (MHD), 2015 WL 3757069, at *19 (S.D.N.Y. June 12, 2015) (same); Flores v. Mamma Lombardi's of Holbrook, Inc., No. 12-CV-3532 (GRB), 2015 WL 2374515, at *12 (E.D.N.Y. May 18, 2015) (same); Ortiz, 2015 WL 778072, at *19 (same).[1] "[T]he purported 'trend' among district courts

---

[1] Indeed, counsel here cite four cases for the proposition that courts in this circuit routinely grant requests of one-third of settlement funds in FLSA class actions. See Hernandez v. Merrill Lynch & Co., No. 11-CV-8472 (KBF) (DCF), 2013 WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013); Beckman v. KeyBank, N.A., 293 F.R.D. 467, 481 (S.D.N.Y. 2013); Willix v. Healthfirst, Inc., No. 07-CV-1143 (ENV) (RER), 2011 WL 754862, at *6 (E.D.N.Y.

within the Circuit to award a flat 33 ⅓% percentage fee in employment common fund class action cases . . . appears to be driven by plaintiffs' counsel seeking high payouts at the expense of silent class members, and ignores important precedential rulings." Flores, 2015 WL 2374515, at *12.

Without a reliable anchor for awarding attorneys' fees as a percentage of the recovery, I will do as other courts have done in FLSA suits and analyze the reasonableness of class counsels' fee application pursuant to the lodestar method. See Lizondro-Garcia, 2015 WL 4006896, at *4 (utilizing the lodestar method because of the concerns expressed in Fujiwara); Gonzalez, 2015 WL 3757069, at *19 ("set[ting] aside the . . . cases and analyz[ing] the reasonableness of counsel's rates the old fashioned way"); Flores, 2015 WL 2374515, at *12 (employing the lodestar method). The lodestar method certainly has its faults. It is prone to "gimlet-eyed review of line-item fee audits," Goldberger, 209 F.3d at 49, and "judicial papershuffling," In re Union Carbide Corp. Consumer Products Bus. Sec. Litig., 724 F. Supp. 160, 165 (S.D.N.Y. 1989). But without a reliable benchmark for reasonableness under the percentage method, the lodestar method is the most appropriate method for these FLSA cases.

## 2. Application of the Lodestar Method

The "lodestar" figure is arrived at by multiplying the attorneys' reasonable hourly rate by the number of hours reasonably expended in the litigation. See Millea, 658 F.3d at 166. Under the traditional lodestar methodology, "[o]nce that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys."

---

Feb. 18, 2011); Clark v. Ecolab Inc., No. 04-CV-4488 (PAC), 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010). However, all four of these decisions have drawn some criticism as "proposed orders masquerading as judicial opinions" or cases relying on those precedents. Fujiwara, 58 F. Supp. 3d at 436; see also Ortiz v. Chop't Creative Salad Co. LLC, No. 13-CV-2541 (KNF), 2015 WL 778072, at *19 (S.D.N.Y. Jan. 16, 2015).

Goldberger, 209 F.3d at 47. Under the "modified" lodestar method more recently articulated by the Second Circuit, "a district court should assess case-specific considerations at the outset, factoring them into its determination of a reasonable hourly rate for the attorneys' work." McDaniel, 595 F.3d at 420 (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008)).[2] "From a mathematical perspective, of course, it makes little difference whether a court . . . considers case-specific factors to estimate a reasonable rate for an attorney's services . . . or whether the court takes the traditional approach and considers these same factors in calculating a multiplier to the lodestar." Id. at 422. But the benefit of considering the so-called Goldberger factors at the outset is that it "shift[s] district courts' focus from the reasonableness of the lodestar to the reasonableness of the hourly rate." Arbor Hill, 522 F.3d at 188; see also McDaniel, 595 F.3d at 422 ("by considering case-specific factors at the outset, the district court's focus on mimicking a market is maintained"). It also has the advantage of tethering these "less objective factors" to a relatively defined benchmark—the prevailing hourly rate in the district for these types of cases. I will use the "modified" lodestar method here.

The starting point is determining the reasonable hourly rate that a "reasonable, paying client would be willing to pay." Arbor Hill, 522 F.3d at 184. Generally those rates are the hourly rates in "the district in which the court sits" for "similar services by lawyers of reasonably comparable skill, experience, and reputation." Reiter v. MTA New York City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) (citations omitted). As this is an FLSA class action, "the reasonable rate should reflect the rates awarded in FLSA cases in this district." Encalada, 2014

_____

[2] Class counsel argues that Arbor Hill is not controlling in common fund cases. The Second Circuit, however, has held otherwise. See McDaniel, 595 F.3d at 421-22. The single case cited by counsel, Garcia v. Pancho Villa's of Huntington Vill., Inc., No. 09-CV-486 (ETB), 2012 WL 5305694, at *8 (E.D.N.Y. Oct. 4, 2012), is inconsistent with McDaniel and not controlling here.

WL 4374495, at *1.[3]  "The court may apply an out-of-district rate (or some other rate, based on

. . . 'case-specific variables') if . . . it is clear that a reasonable, paying client would have paid

those higher rates."  Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009)

(quotations and citations omitted).  In other words, the court may adjust the hourly rate based on

the complexity and risk of the litigation, the quality of the attorneys, or public policy

considerations.

"It takes little effort to ascertain the prevailing rates in FLSA cases in this district. . . . It

is now well established, and should remain so unless there is a significant change in the market

for legal services in this area, that the prevailing hourly rate for partners in this district ranges

from $300.00 to $400.00, and a reasonable hourly rate for a senior associate ranges from $200 to

$300.  Junior associates generally command $100 to $150 dollars per hour."  Hui Luo v. L & S

Acupuncture, P.C., No. 14-CV-1003 (BMC), 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015)

(quotations, modifications and citations omitted); see also Flores, 2015 WL 2374515, at *19

(awarding $350 for a senior partner, $200 for junior partners and associates, and $75 for

paralegals); Griffin v. Astro Moving & Storage Co. Inc., No. 11-CV-1844 (MKB), 2015 WL

1476415, at *8 (E.D.N.Y. Mar. 31, 2015) (reasonable hourly rates are $300 to $450 for partners,

$200 to $325 for senior associates, and $100 to $200 for junior associates); Tacuri v. Nithin

Constr. Co., No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015)

---

[3] This wisdom of treating Brooklyn and Manhattan as separate legal markets is questionable.  As one of my
colleagues has noted:

> the border between the Eastern and Southern Districts of New York is uniquely permeable, with
> the two districts linked to one another . . . by numerous bridges, tunnels, and highways.  Indeed, it
> is possible to walk from the United States Courthouse in Brooklyn, across the Brooklyn Bridge, to
> the United States Courthouse in Manhattan.  A strict application of the forum rule would ignore
> this geographic reality and its economic consequences . . . it should not be read so strictly as to
> create an unreasonable disincentive for Manhattan-based attorneys to bring . . . suits in Brooklyn.

Luca v. Cnty. of Nassau, No. 04-CV-4898 (FB), 2008 WL 2435569, at *9 (E.D.N.Y. June 16, 2008), vacated in part,
344 F. App'x 637 (2d Cir. 2009) (quotation marks and citations omitted).  Unfortunately, the Circuit does not agree.
See Simmons v. New York City Transit Auth., 575 F.3d 170, 175 (2d Cir. 2009).

(prevailing hourly rates for partners range from $300 to $400 and for senior associates range from $200 to $300); Lema v. Mugs Ale House Bar, No. 12-CV-2182 (PKC) (JO), 2014 WL 1230010, at *6 (E.D.N.Y. Mar. 21, 2014) (awarding rates of $300 to $350 for partners, $125 to $225 for associates, and $75 for paralegals); Fawzy v. Gendy, No. 12-CV-5580 (BMC), 2013 WL 5537128, at *1 (E.D.N.Y. Oct. 6, 2013) (hourly rates range from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants); Jean v. Auto & Tire Spot Corp., No. 09-CV-5394 (ARR) (RLM), 2013 WL 2322834, at *6 (E.D.N.Y. May 28, 2013) (rates for "attorneys handling FLSA cases . . . usually range from $300 to $400"); Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (hourly rates range from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants).

In this case, counsel for plaintiffs seek the following hourly rates: $750 for senior partner Lee Shalov, $650 for senior partner Louis Ginsberg, $400 for senior partner Neil Solomon, $350 for junior partner Brett Gallaway, $400 for senior associate Wade Wilkinson, $375 for associate Matthew Cohen, $190 for first-year associate Jason Giaimo, $150 for paralegal Alexandra Behrman, and $85 for paralegal Harrison Shapiro. Clearly, these rates are significantly higher than hourly rates commonly awarded by judges in this district. Counsel advance a number of arguments for why I should apply rates different than those generally approved of in FLSA cases in the district. None of these arguments are compelling.

First, counsel point out that these prevailing rates are awarded in FLSA fee shifting or default judgment cases, not in common fund cases. Citing four cases in which rates similar to those here have apparently been approved, they argue that compensation in common fund cases

should be higher than in other contexts.[4] These orders, however, awarded fees using the

percentage-of-the-fund method, not the lodestar method. The prevailing hourly rate in this

district cannot be inferred by interpreting percentage awards as blessing attorneys' standard

hourly rates (which are not even referenced in these orders). Additionally, the above-quoted

rates are reflective of the rates approved of in common fund cases. See, e.g., Flores, 2015 WL

2374515, at *17 (applying the same rates in a common fund case); Guzman v. Joesons Auto

Parts, No. 11-CV-4543 (ETB), 2013 WL 2898154, at *5 (E.D.N.Y. June 13, 2013) (same). If

anything, since the fee application process is generally non-adversarial in common fund cases,

there is greater reason to be circumspect toward proposed hourly rates outside of the prevailing

range in the district.

Second, plaintiffs' counsel points out that the attorneys at Duane Morris LLP

representing DHL in this case are on average compensated at a rate of $620 per hour for partners

and $370 per hour for associates. This alone does not justify a higher rate. "Apples have to be

compared to apples, not oranges." Fawzy, 2013 WL 5537128, at *2. Duane Morris is a large

firm with many diverse practice areas and institutional clients. Its billing rates are not a

reasonable metric for selecting a rate here. The Second Circuit has never required, or even

suggested, that hourly rates for plaintiffs' attorneys in FLSA cases should be equal to their

defense-side colleagues.

Third, counsel from McLaughlin & Stern argue that, as a mid-size firm, they should be

paid at a higher rate, and at the prevailing rate they will lack incentives to prosecute common

fund cases in the Eastern District. FLSA cases, they say, will be left to small firms and solo

---

[4] See Siewharack v. Queens Long Island Medical Group, P.C., No. 11-CV-3603 (WFK) (ARL) (E.D.N.Y. June 14, 2013); Massiah v. MetroPlus Health Plan, Inc., No. 11-CV-05669 (BMC), 2012 WL 5874655, at *7 (E.D.N.Y. Nov. 20, 2012); Willix v. Healthfirst, Inc., No. 07-CV-1143 (ENV) (RER), 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011); Khait v. Whirlpool Corp., No. 06-CV-6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010).

practitioners who can afford to be paid cheaper rates. "Cleary, the rate must be carefully ascertained so as to not disincentivize lawyers from pursuing FLSA cases in favor of other work. But there seems no danger of that as the going rate of $350 per hour in this district has occurred along with an explosion of these cases in this district, more than double what they were in 2008." Id. (noting that "the dramatic increase in FLSA filings in this district . . . suggests that no rate increase is needed to incentivize plaintiffs' attorneys to bring these cases"); see also Encalada, 2014 WL 4374495, at *1 (noting that there is a "robust 'buyers' market' for plaintiffs looking for FLSA lawyers [which] will have a depressive effect on the reasonable hourly rate"). I am sympathetic to the fact that mid-size law firms in Manhattan offices may have greater overhead than their solo counterparts in Brooklyn, although changing economic conditions might undermine such a conclusion. However, these considerations do not justify a departure from the prevailing rates approved of in this district. They do justify higher rates within the range of prevailing rates.

Fourth, counsel argue that the complexity and risk of this case justify higher rates. Complexity and risk are both Goldberger factors, and while neither justifies a departure from the prevailing hourly rate range, they can weigh in favor of adopting rates at the higher end of those ranges. As already noted, there are relatively few FLSA cases "that raise complex issues like exemptions, coverage, collective action notification, classification, or statutory interpretation." Encalada, 2014 WL 4374495, at *2. Most cases "could hardly be simpler—an employee contends that he worked more hours than he was paid, entitling him to either unpaid minimum wages or overtime or both, and the employer lacks records to conclusively refute the claim." Id. Here, as counsel concedes, "the facts and legal issues in the case were not inscrutable or never before encountered," and the complexity that counsel has ascribed to the case is difficult to

identify. Some of the more complex issues were never litigated or decided. That said, DHL did raise questions of the arbitrability and preemption of plaintiffs' claims, and that introduced a layer of complexity to the case. Irrespective of the level of complexity of the case, there is inherent risk to taking a class action on an entirely contingent fee basis. See Ortiz, 2015 WL 778072, at *17. While many FLSA cases settle, no case is a sure thing. Plaintiffs' counsel should certainly be rewarded in their hourly rates for taking on risk in pursuing the claims here.

Fifth, counsel touts the result achieved in this case and argues that it justifies a higher hourly rate. As already noted, while the settlement here is not exceptional, it is a good recovery for the class. I am not convinced that this is a result that could only be accomplished by a firm from outside of the district of the size and caliber of McLaughlin & Stern. This factor weighs in favor of a higher hourly rate within the prevailing range, but again nothing outside of that range.

Based on the attorneys' qualifications and the considerations outlined above, each attorney will be compensated as follows: Mr. Shalov at the rate of $400 per hour, Mr. Ginsberg at the rate of $400 per hour, Mr. Solomon at the rate of $325 per hour, Mr. Gallaway at the rate of $300 per hour, Mr. Wilkinson at the rate of $300 per hour, Mr. Cohen at the rate of $250 per hour, Mr. Giaimo at the rate of $100 per hour, Ms. Behrman at the rate of $75 per hour, and Mr. Shapiro at the rate of $75 per hour.

The second part of the modified lodestar method is determining the reasonable number of hours expended by plaintiffs' counsel in this litigation. "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended." Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the

date, the hours expended, and the nature of the work done." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" Id. (quoting Hensley, 461 U.S. at 434, and New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983)).

Counsel from McLaughlin & Stern claim that they expended a total of 1,065 hours litigating this matter, and counsel from The Louis Ginsberg firm report that they spent an additional 260 hours on the case. An examination of the billing records from each firm reveals that these numbers are overstated. Many of the timekeeping entries, particularly for the attorneys at The Ginsberg Firm, are vague and evidence redundant work. For instance, in the first two months of the case alone, Mr. Ginsberg billed time for "reviewed lawsuits," "work re: lawsuits," "research re: same," "reviewed e-mails re: case," and "reviewed e-mail correspondence." Those practices are reflected throughout the duration of the case. Additionally, while having two firms engaged in the same case necessarily results in a degree of overlap in tasks, some duplication seemed particularly unnecessary. The time entries submitted for the two most senior partners in this case—Mr. Shalov and Mr. Ginsberg—indicate that they spent the majority of their time reviewing the work of other attorneys and conferring with each other. This top heavy approach could have been reduced or avoided. The submitted hours are excessive as a result. See Bodon v. Domino's Pizza, LLC, No. 09-CV-2941 (RLM), 2015 WL 3889577, at *10 (E.D.N.Y. June 4, 2015), adopted, 2015 WL 3902405 (E.D.N.Y. June 24, 2015) (reducing hours for redundancies between two firms); Flores, 2015 WL 2374515, at *16 (reducing hours that contained "primarily vague and unilluminating entries" such as "review transcript" or "review files").

The attorneys' time is also plagued by problems with their timekeeping. "[B]lock-billing—the grouping of multiple tasks into a single billing entry—is not *per se* unreasonable." Hines v. City of Albany, No. 14-2299, 2015 WL 3479820, at *3 (2d Cir. June 3, 2015) (summary order) (citing Merck Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 266 (2d Cir. 2014)); see also United States v. Sixty-One Thousand Nine Hundred Dollars & No Cents ($61,900.00), 856 F. Supp. 2d 484, 490 (E.D.N.Y. 2012) (declining to reject block billing on a *per se* basis). However, "[a]s a general rule, [the practice] is disfavored." Beastie Boys v. Monster Energy Co., No. 12-CV-6065 (PAE), 2015 WL 3823924, at *18 (S.D.N.Y. June 15, 2015). In the context of fee applications, "block-billing makes it difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided." Sheet Metal Workers' Nat. Pension Fund v. Coverex Corporate Risk Solutions, No. 09-CV-0121 (SJF) (ARL), 2015 WL 3444896, at *12 (E.D.N.Y. May 28, 2015) (citations omitted) (collecting cases); see also Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC, 549 F. Supp. 2d 274, 283 (E.D.N.Y. 2008); Molefi v. Oppenheimer Trust, No. 03-CV-5631 (FB) (VVP), 2007 WL 538547, at *7 (E.D.N.Y. Feb. 15, 2007). In particular, block billing "is most problematic where large amounts of time (*e.g.*, five hours or more) are block billed." Beastie Boys, 2015 WL 3823924, at *18. The attorneys here regularly block billed. While many of the entries are temporally short, there are at least 35 entries exceeding five hours. Such lengthy billing periods with numerous tasks complicate the Court's review and suggest overbilling.

Additionally, the attorneys at McLaughlin & Stern billed their time in quarter hour increments, which "tends substantially to overstate the amount of time spent when many tasks require only a short time span to complete, and that adds an upward bias in virtually all cases." Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC, No. 05-CV-6757 (LTS) (MHD), 2009

WL 466136, at *4 (S.D.N.Y. Feb. 25, 2009); see also Cowan v. Ernest Codelia, P.C., No. 98-CV-5548 (JGK), 2001 WL 30501, at *8 (S.D.N.Y. Jan. 12, 2001) (condemning the practice); G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 441-42 (S.D.N.Y. 2012) (noting that courts are divided on the practice). There are countless instances here of attorneys billing a quarter of an hour for a telephone call or for sending or reading an e-mail. Certainly in most instances those tasks did not take a full 15 minutes, and as a result the practice overstates the firm's time. There is a bit of irony in the fact that the attorneys accusing DHL of improper rounding are themselves rounding their time.

Lastly, it appears that the attorneys billed the full amount of their travel time. "[T]he general operating principle in this district is that travel time is compensated at one-half the amount of time billed." In re Vitamin C Antitrust Litig., No. 05-CV-453 (BMC) (JO), 2013 WL 6858853, at *4 (E.D.N.Y. Dec. 30, 2013); see also Wise v. Kelly, 620 F. Supp. 2d 435, 453 (S.D.N.Y. 2008). Travel time, accordingly, should be halved.

In lieu of a line item review and reduction of counsel's time, the Court will impose an across-the-board percentage cut in hours of 10% in order to trim the excess from these billing entries. See In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987) ("the district court has the authority to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application"); Torres v. Gristede's Operating Corp., 519 F. App'x 1, 4 (2d Cir. 2013) (noting "the recognized practice of percentage cuts as a practical means of trimming fat from a fee application"). Given my concerns about the billing practices at work here, 10% seems eminently reasonable. See Lora v. J. V. Car Wash, LTC., No. 11-CV-9010 (LLS) (AJP), 2015 WL 4496847, at *14 (S.D.N.Y. July 24, 2015) (imposing a 10% across-the-board reduction); Gonzalez, 2015 WL 3757069, at *23 (curtailing an attorney's hours with

an across-the-board, 10% reduction); Dominguez v. B S Supermarket, Inc., No. 13-CV-7247

RRM CLP, 2015 WL 1439880, at *17 (E.D.N.Y. Mar. 27, 2015) (applying an across-the-board

reduction of 10% reduction).  In fact, in their letter dated July 16, 2015, plaintiffs' counsel

suggested a 10% reduction to "address any questions regarding redundancy in billing."

Accordingly, counsel's time is reduced by 10 percent.

In sum, the attorneys' hourly rates and billed hours are adjusted as follows:

| Timekeeper | Adjusted Hourly Rate | Credited Hours Billed | Total |
|---|---|---|---|
| Lee Shalov | $400 per hour | 202.95 | $81,180.00 |
| Louis Ginsberg | $400 per hour | 128.79 | $51,516.00 |
| Neil Solomon | $325 per hour | 21.33 | $6,932.25 |
| Brett Gallaway | $300 per hour | 534.47 | $160,341.00 |
| Wade Wilkinson | $300 per hour | 126.9 | $38,070.00 |
| Matthew Cohen | $250 per hour | 105.21 | $26,302.50 |
| Jason Giaimo | $100 per hour | 15.8 | $1,580.00 |
| Alexandra Behrman | $75 per hour | 42.9 | $3,217.50 |
| Harrison Shapiro | $75 per hour | 14.63 | $1,097.25 |

Multiplying the adjusted hourly rates by the credited hours billed, the presumptively

reasonable fee due to plaintiffs' counsel is $370,236.50.

While counsel urge the use of a lodestar multiplier, the various considerations that might

justify a multiplier have already been factored into the determination of counsel's reasonable

hourly rate.  I decline to add a multiplier to the fee award.  See Goldberger, 209 F.3d at 51-57.

Therefore, class counsel is awarded $370,236.50 in attorneys' fees.

D.  Costs

"Courts typically allow counsel to recover their reasonable out-of-pocket expenses."

Flores, 2015 WL 2374515, at *20 (quoting Viafara, 2014 WL 1777438, at *15).  At Judge

Orenstein's request, counsel submitted documentation for their costs totaling $33,371.39.  Those

costs appear reasonable, and the Court awards $33,371.39 in costs.

E. Service Awards

"Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." Flores, 2015 WL 2374515, at *20 (quoting Viafara, 2014 WL 1777438, at *6). Plaintiffs request an award of $5,000 per plaintiff, totaling $15,000. The requested amount is reasonable. Accordingly, the Court awards $5,000 for each of the two named plaintiffs and opt-in plaintiff Lorna Dhun based on their service to the class.

F. PAGA Payment

The Court approves a PAGA payment of $5,000 to be paid and allocated in accordance with section 4.6 of the settlement agreement.

## CONCLUSION

For the reasons stated above, the Court hereby grants: (1) final approval of the settlement, (2) the award of $370,236.50 in fees to class counsel, (3) the award of $33,371.39 in reimbursement for costs to class counsel, (4) the award of $5,000 to each of the plaintiffs as a service award, and (5) approval to a PAGA payment of $5,000.

SO ORDERED.

Dated: Brooklyn, New York
         September 21, 2015

/s/ Judge Raymond J. Dearie
_____
RAYMOND J. DEARIE
United States District Judge